IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEANNA PRESTON,

    Plaintiff,

v.                                                                        No. 15-cv-1029 SMV/LAM

COUNTY OF LINCOLN, ROBERT SHEPPERD,[1]
and JOHN DOES I and II,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants County of Lincoln and Sheriff Robert Shepperd's Motion to Dismiss ("Motion") [Doc. 3], filed on November 19, 2015. Plaintiff responded on December 4, 2015. [Docs. 10, 12]. Defendants replied on December 21, 2015. [Doc. 13]. The parties have consented to the undersigned's presiding over this matter and entering final judgment. [Doc. 7]. No hearing is necessary on the Motion. *See* D.N.M.LR-Civ. 7.6.

The Court finds that it is without jurisdiction to hear Plaintiff's Title VII claim, which should be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1). Because the state administrative appeal of Plaintiff's 3-day suspension shares a common nucleus of operative facts with her Title VII claim—but not the other federal claim—the Court does not have supplemental jurisdiction over the administrative appeal of the 3-day suspension. The administrative appeal should be remanded to state court. The claim for unreasonable search and seizure against

---

[1] It appears that Defendant Shepperd's surname was misspelled in the Complaint. *Compare* Complaint [Doc. 1-9] at 10 ("Sheppard"), *with* Notice of Removal [Doc. 1] ("Shepperd"). The caption is amended to reflect the correct spelling of Defendant Shepperd's name.

Defendants Shepperd and Lincoln County will be dismissed for failure to state a claim but will remain against the John Doe Defendants only. *See id.* Plaintiff must serve the John Doe Defendants no later than **July 18, 2016**, or otherwise show cause why her claims against them should not be dismissed without prejudice. *See* Fed. R. Civ. P 4(m).

## BACKGROUND

This case arises from a 3-day suspension from work without pay. *See* [Doc. 1-9] at 14. In late 2014, Plaintiff (a Deputy Sheriff with the Lincoln County Sheriff's Department) and her fellow deputy, Deputy Hiebert, removed a loaded rifle from a suspect's pick-up truck, which resulted in discipline for both deputies. *Id*. at 11. The details are laid out in the Complaint, but suffice it to say that Plaintiff received a 3-day suspension without pay, while Deputy Hiebert's discipline was less harsh. *Id*. at 15. Plaintiff attributes this disparate treatment to the fact that she is the only woman deputy employed by Lincoln County. *Id.* at 12. She alleges a hostile work environment and that she was threatened after attempting to complain through the proper channels. *Id.*

She recounts that on April 15, 2015, she suffered an unrelated medical emergency while off-duty at her private residence. *Id.* at 17–19. She called 911, and an ambulance was dispatched. However, two deputies also arrived, even though no criminal activity had been reported. She alleges that the deputies entered her home against her wishes and improperly confiscated her personal firearm and cell phone. She further alleges that when she complained to her employer (presumably also the employer of the two deputies), the weapon was returned to

her.  Finally, she alleges that representatives of the Sheriff's Department illegally entered her home a second time and returned her cell phone to its place in her bureau drawer.  *Id.*

Plaintiff pursued administrative remedies as to the 3-day suspension.  *See id.* at 15–17.  She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Division ("NMHRD") on July 7, 2015.  [Docs. 12-1 and 12-2].  She then filed a lawsuit in state court on October 13, 2015.  [Doc. 1-9] at 10–33.  Her Complaint identifies three claims: (1) a direct appeal of the administrative decision to uphold her 3-day suspension; (2) civil rights claims against the John Doe deputies for unlawful search and seizure and against Defendants Shepperd and Lincoln County for maintaining a "custom, policy[,] and practice of violating the civil rights of members of the public[;]" and (3) claims under Title VII and the New Mexico Human Rights Act ("NMHRA") for gender-based employment discrimination.  *Id.*

Defendants move to dismiss the direct appeal of the suspension because, they argue, Plaintiff fails to meet certain pleading requirements that Defendants believe are jurisdictional.  [Doc. 3] at 6–9.  They further argue that Plaintiff fails to state a claim against Defendants Shepperd and Lincoln County as to the allegedly unlawful search and seizure.  *Id.* at 5–6.  Finally, they argue that Plaintiff failed to exhaust her administrative remedies with respect to the claims under Title VII and the NMHRA, and therefore, such claims should be dismissed for lack of jurisdiction.  *Id.* at 3–5.  The Court addresses the arguments in order of analytical convenience.

### Plaintiff fails to state a claim under § 1983 against Defendants Shepperd or Lincoln County.

A court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8 provides that a complaint filed in federal court need contain only a "short and plain" statement of (1) the grounds supporting the district court's subject matter jurisdiction, (2) "the claim showing that the pleader is entitled to relief," and (3) the demand for the relief that the pleader seeks. Fed. R. Civ. P. 8(a). The complaint must "provide enough factual allegations for a court to infer potential victory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

For Plaintiff's complaint to survive a motion to dismiss, her claims must be nudged "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although a court must accept as true all of the allegations in a complaint, deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

It is well-settled that a local governing body, such as a county, cannot be held liable for a § 1983 violation under the theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, § 1983 is specific in authorizing claims only against a "person who, under color of any statute, ordinance, regulation, custom or usage" deprived another of her federal constitutional or statutory rights. 42 U.S.C. § 1983. Generally, a party who asserts a

claim for relief under § 1983 must satisfy two elements: (1) "the plaintiff must allege that some person has deprived [her] of a federal right," and (2) "[s]he must allege that the person who has deprived [her] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

There is a second way of obtaining relief under § 1983. In *Monell*, the Supreme Court recognized that a practice may be so persistent and wide-spread that it constitutes a "custom or usage" having the force of law, even though it has "not received formal approval through the body's official decisionmaking channels." 436 U.S. at 690–91.

> Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a "custom or usage" with the force of law.

*Id.* (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). Therefore, a local governing body may be held liable under § 1983 when it has a "policy or custom" that results in a constitutional harm. *Id.* at 694.

In the Tenth Circuit, a "policy or custom" in the § 1983 context may take several different forms, including the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Id.* (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)). A pattern of similar constitutional violations is "ordinarily necessary" to demonstrate deliberate indifference for purposes of a failure-to-train claim. *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. Of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997).

Failing to show such a pattern, the plaintiff must show that the need for "more or different training is *so obvious*, and the inadequacy *so likely* to result in the violation of constitutional rights, that the policymakers of the [local governing body] can reasonably be said to have been deliberately indifferent to the need" for training. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (emphases added); *accord Connick*, 131 S. Ct. at 1361.

Finally, it is not enough to show that there are general deficiencies in a county's training program for its employees. *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). Instead, a plaintiff must identify a specific deficiency in the training program that is closely related to her alleged injury, and she must prove that the deficiency in training actually caused the employee to act with deliberate indifference to her safety. *Id.* (citing *City of Canton*, 489 U.S. at 391); *see also Bryson*, 627 F.3d at 788 (plaintiff must show a "direct causal link" between the policy or custom and the alleged injury) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)); *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (plaintiff must show an "affirmative link" between the policy or custom and the alleged constitutional violation).

In this case, there is no dispute that Plaintiff must allege facts that, if true, would show that her injury resulted from the execution of a policy or custom of Defendant Lincoln County or Defendant Shepperd. *See* [Doc. 10] at 5; [Doc. 13] at 1–3. The dispute here is whether Plaintiff has sufficiently alleged such a policy or custom. *Compare* [Doc. 3] at 6 (arguing that her allegations are not enough), *with* [Doc. 10] at 6 (arguing that her allegations are enough) (citing [Doc. 1-9] at 19, ¶ 55).

Plaintiff's Complaint alleges that about six months after she was suspended without pay (and during the time that she was appealing the suspension), she suffered a medical emergency while off-duty and at her home. She called 911 for help. An ambulance responded, along with the two unnamed Defendant Sheriff's Deputies. [Doc. 1-9] at 17–18, ¶¶ 41–47. She alleges that the Defendant Deputies unlawfully entered and searched her home, unlawfully seized her personal property (firearm(s) and cell phone), and later, unlawfully entered her home a second time to surreptitiously return the cell phone. *Id.* at 17–19, ¶¶ 41–60. Plaintiff believes that the Defendant Deputies disregarded her Fourth Amendment rights on "order from her superiors" in order to "determine who she had been speaking to and how it related to the ongoing dispute of employment discrimination[.]" *Id.* at 19, ¶ 56.

Plaintiff further alleges in her Complaint that "[t]he County of Lincoln and its Sheriff have a custom, policy[,] and practice of violating the civil rights of members of the public." *Id.* at 19, ¶ 55. However, she is clear that "[t]here is no policy or practice of the Lincoln County Sheriff's Office to respond to medical calls by private citizens [that] do not involve a criminal investigation. There is likewise no policy for Lincoln County Sheriff's Office deputies to respond to off-duty medical calls by other Lincoln County Sheriff's Office personnel." *Id.* at 18, ¶ 47. Finally, and most importantly, she does not allege that the deputies entered her home or took her belongings pursuant to any custom, policy, or practice. Instead, she affirmatively alleges that they took these actions "on order from her superiors." *Id.* at 19, ¶ 56.

Although Plaintiff attempts to couch her claim as one based on a custom, policy, or practice, it is really a claim under the theory of respondeat superior. She wants to hold

7

Defendants Shepperd and the County responsible for the wrongdoing of individuals in their employ. Plaintiff alleges that her superiors at the Sheriff's Department wanted to gain intel related to their dispute with her over her 3-day suspension. [Doc. 1-9] at 19. So, she believes they sent the deputies to unlawfully enter her residence and take her phone. These allegations *may* potentially state a claim against the unidentified superiors, but they state no claim against Defendants Shepperd or Lincoln County. Significantly, she does not allege that Defendants Shepperd or Lincoln County had a custom, policy, or practice of stealing the phones of employees who challenged their discipline or otherwise deploying deputies as "muscle" in personnel disputes. Plaintiff does not allege that Defendant Shepperd was personally involved in sending the unnamed deputies to her home  Nor does she allege any custom, policy, or practice that could have led to the Fourth Amendment violations she claims.

The Court finds that Plaintiff's Complaint fails to state a claim against Defendants Shepperd or Lincoln County. Her allegation of a "custom, policy[,] and practice" is conclusory. *See* [Doc. 1-9] at 19, ¶ 55. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiff fails to identify what custom, policy, or practice she challenges (other than a wholly unspecific "policy" of violating the public's civil rights). It is unclear what civil rights she believes are violated by this unidentified custom, policy, or practice. It is also unclear how the unidentified custom, policy, or practice is connected to her alleged injuries or, indeed, which injuries. In short, the allegations in the Complaint—even if true—fail to state a claim against Defendants Shepperd or Lincoln County under § 1983.

## The Court does not have jurisdiction to hear Plaintiff's Title VII or NMHRA claim because she has not exhausted her administrative remedies.

"[E]xhaustion of administrative remedies is a jurisdictional prerequisite to instituting a Title VII action in federal court." *Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993) (internal quotation marks omitted); *see Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) ("[E]xhaustion of administrative remedies is a prerequisite to [a Title VII] suit."). Exhaustion of a Title VII claim can be evidenced by a right-to-sue letter from the EEOC. *E.g., Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A district court must dismiss an unexhausted Title VII claim for lack of subject matter jurisdiction. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1318 (10th Cir. 2005) (applying the well-established Title VII exhaustion rules to claims under the Age Discrimination in Employment Act).

Similarly, to pursue a state-law claim under the NMHRA, a plaintiff must exhaust her state administrative remedies as to that claim. "Complaints filed with the EEOC are deemed properly filed with the [New Mexico Human Rights] Division." *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 8, 314 P.3d 681, 684. Nevertheless, if a plaintiff wishes to proceed with a state-law claim beyond the initial filing stage, she must follow the grievance process provided under state law. *Id.* at ¶ 10. A plaintiff must receive an order of nondetermination from the NMHRD in order to proceed in court. *Id.* (citing *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 16, 127 N.M. 282). An EEOC right-to-sue letter cannot be substituted for an order of nondetermination from the NMHRD. *Id.* Without such an order of

nondetermination, a plaintiff has failed to exhaust administrative remedies under the NMHRA. *Id.*

There is no dispute in this case that Plaintiff filed her Complaint (on October 13, 2015) before obtaining either a right-to-sue letter from the EEOC or an order of nondetermination from the NMHRD. [Doc. 1-9] at 20. Accordingly, Defendants move to dismiss the Title VII and NMHRA claims for lack of exhaustion and, thus, lack of jurisdiction. [Doc. 3] at 3–5.

Plaintiff responds that "any lack of exhaustion is self-curing" because her administrative exhaustion process would end on or around January 4, 2016, at which point presumably, she would have the right-to-sue letter from the EEOC.[2] [Doc. 10] at 4. She insists that exhaustion will inevitably occur in this case, that the filing of her lawsuit has not deterred the administrative process, and that Defendants have not been prejudiced. *Id.* at 4. She urges that she be allowed to "cure" her failure to exhaust as soon as she receives her right-to-sue letter. *Id.* at 3–4 (quoting *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1369–70 (D.N.M. 2011) ("[T]he failure to obtain a right-to-sue letter prior to the commencement of a [Title VII] suit is a curable defect.")).

There are several problems with Plaintiff's position. First, Tenth Circuit precedent is unclear as to whether a Title VII plaintiff may file her lawsuit prior to obtaining a right-to-sue letter. *Compare Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 852, 855 n.3 (10th Cir. 2005) (holding that an incarcerated, pro se plaintiff's failure to attach his right-to-sue letter to his complaint could be cured by attaching it to his response to the defendants' motion to dismiss

---

[2] Plaintiff makes no express argument about an order of nondetermination from the NMHRD, other than that her initial charge of discrimination was "dually filed under New Mexico State Law and Federal Law." [Doc. 12-1] through [Doc. 12-2] (charge of discrimination); *see* [Doc. 10] at 3–4 (argument on exhaustion).

where the administrative process was not hampered and the defendants were not prejudiced by the "premature" filing of the Title VII claim), *with Dalvit v. United Airlines, Inc.*, 359 F. App'x 904, 912 n.9 (10th Cir. 2009) (affirming the district court's finding that there is no jurisdiction to hear a Title VII claim brought before the right-to-sue letter is obtained and holding that "a party generally may not cure the jurisdictional defect by belatedly pursuing her administrative remedies.").

Second, assuming *arguendo* that Plaintiff were correct and that she might cure her lack of exhaustion sometime after filing her complaint, she still has not done so. She indicated that her administrative remedies would be exhausted on or around January 4, 2016. [Doc. 10] at 4. That date has come and gone. Plaintiff has given no indication that she has the right-to-sue letter, the order of nondetermination, or any other evidence of exhaustion. She has provided no reason for the delay, nor has she indicated to the Court when she expects to receive the necessary evidence.

Third, assuming *arguendo* that Plaintiff were correct and that she might cure her lack of exhaustion sometime after filing her complaint, no authority would grant her an indefinite amount of time to do so. Defendants should not have the claims hanging over their heads indefinitely. To allow the filing a lawsuit before exhaustion is complete would seem to contravene Congress's policy of encouraging employees and employers to resolve their disputes through the administrative process. Finally, allowing the Title VII and NMHRA claims to linger indefinitely would hamper the orderly litigation of claims that *are* properly before this Court.

Under Fed. R. Civ. P. 12(b)(1), the Title VII and NMHRA claims must be dismissed without prejudice for lack of exhaustion and, thus, lack of subject matter jurisdiction.

## The Court does not have jurisdiction to hear the administrative appeal of Plaintiff's 3-day suspension.

Plaintiff brings two factually independent federal claims: one for gender-based employment discrimination (under Title VII), and one for unlawful search and seizure (under § 1983).  Plaintiff's state-law claims (the NMHRA claim and the direct appeal of her 3-day suspension) share a common nucleus of operative facts with her Title VII claim.  *Compare* [Doc. 1-9] at 11–17 (Title VII claim), *with id.* at 11–17 and 20–21 (state-law claims).  However, these state-law claims are factually unrelated to the § 1983 search-and-seizure claim.  *Compare id.* at 11–17 and 20–21 (state-law claims), *with id.* at 17–19 (§ 1983 search-and-seizure claim)  Accordingly, if the Court had jurisdiction to hear the administrative appeal of the 3-day suspension, such jurisdiction would be merely supplemental to the federal question jurisdiction of the Title VII claim.  Because the administrative appeal of the 3-day suspension shares no common fact with the remaining § 1983 claim, jurisdiction based on that claim could not be supplemental to the jurisdiction based on the § 1983 claim.

> If the federal claim was dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication.  The dismissal means that there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental.  Therefore, the district court has no discretion to exceed the scope of its Article III power, and must dismiss the state law claims without prejudice.

*Estate of Harshman v. Jackson Hole Mt. Resort Corp.*, 379 F.3d 1161, 1168 n.3 (10th Cir. 2004) (quoting 16 James Wm. Moore et al., Moore's Federal Practice § 106.66[1] (3d ed. 2004)). Here, dismissal of the Title VII claim for lack of subject matter jurisdiction strips the Court of its

supplemental jurisdiction to hear the administrative appeal of the 3-day suspension, which should be remanded to state court.  *See* 28 U.S.C. § 1441(c).

### **The § 1983 claims against the John Doe Defendants remain.**

The Court has given serious consideration to the proper administration of the remaining claims for unlawful search and seizure against the John Doe Defendants.  Pursuant to § 1441(c), the Court finds that it should retain these § 1983 claims.  Plaintiff must identify the John Doe Defendants and serve them process within **90 days** or show cause why her claims against them should not be dismissed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants County of Lincoln and Sheriff Robert Shepperd's Motion to Dismiss [Doc. 3] is **GRANTED IN PART and DENIED IN PART**:

(1) The Title VII claim is **DISMISSED without prejudice** for lack of exhaustion and, thus, lack of subject matter jurisdiction.

(2) The NMHRA claim is **DISMISSED without prejudice** for lack of exhaustion and, thus, lack of subject matter jurisdiction.

(3) The administrative appeal of the 3-day suspension is **REMANDED** to state court.

(4) The § 1983 claims for unreasonable search and seizure against Defendants Shepperd and Lincoln County are **DISMISSED**, but they remain against the John Doe Defendants.

(5) Because no claims remain in this federal court action against Defendants Shepperd and Lincoln County, they are **DISMISSED** from this federal court action.

 (6) The only remaining claims and parties in this federal action are the § 1983 claims for unreasonable search and seizure against the John Doe Defendants.

**IT IS FURTHER ORDERED** that Plaintiff identify and serve the John Doe Defendants no later than **July 18, 2016**, or otherwise show cause why her claims against them should not be dismissed without prejudice.  *See* Fed. R. Civ. P 4(m).

**IT IS SO ORDERED.**

                _____
                **STEPHAN M. VIDMAR**
                **United States Magistrate Judge**
                **Presiding by Consent**